IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

BERTRAM MCMANIS                                                    PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:04CV822BN

OFFICER BROWN, ET AL                                              DEFENDANTS

_____

MEMORANDUM OPINION AND ORDER

THIS CAUSE CAME before the undersigned United States Magistrate Judge for an

omnibus hearing on the 7th day of February, 2006, conducted at the James O. Eastland Federal

Courthouse in Jackson, Mississippi.  The Plaintiff appeared  *pro se*, and the Defendants were

represented by Charles H. Weissinger, Jr., Rolling Fork, Mississippi.  At the hearing, the parties

executed a Consent to the Exercise of Jurisdiction by a United States Magistrate Judge, and on

February _____, 2006, United States District Judge William H. Barbour, Jr. entered an Order

referring this matter to the undersigned for all further proceedings in accordance with 28 U.S.C.

636(c), FED. R. CIV. P. 73 and the parties' consent.

The hearing was conducted in part to ascertain whether or not the Plaintiff's claims were

supported by a factual or legal basis as to establish a constitutional violation by these Defendants.

The Court has carefully considered the testimony of the Plaintiff and has reviewed both the

Plaintiff's medical records and his jail file.  Applying the appropriate law to the Plaintiff's claims,

the Court concludes that he has not stated a constitutional claim against these Defendants.

The Plaintiff testified that on August 24, 2003, he was incarcerated in the Holmes

Humphrey Regional County Correctional Facility as a convicted felon. On that date, he awakened

from his sleep, got up, and walked by another inmate, Demond Robinson.  Robinson, a/k/a "Big

D," started mouthing off to him by saying things like "say excuse me when you walk by." When the Plaintiff did apologize, Robinson attacked him, stabbing him twice with a knife.   The Defendants were officers at the facility, and they escorted everyone to the front of the building. The Plaintiff contends that he was bleeding and requested medical treatment; according to him, no medical treatment was provided at that time.

The Plaintiff contends that these Defendants failed to protect him, as required by the United States Constitution, and that they did not provide him with adequate medical care for his wounds. He initially sued the inmate Robinson as well as the current Defendants.  Because Robinson is not a "state actor" under 42 U.S.C. Section 1983, he was dismissed at the onset of the case.

The Plaintiff testified that Robinson had never done anything like this to him before, nor does he know of anyone else Robinson had assaulted.  Robinson made no verbal threats against him prior to this incident.  Therefore, the Plaintiff had no reason to request protection from these Defendants or from any other prison personnel. The Plaintiff conceded that he had not put any officials on notice of any fear of Robinson, as he himself did not fear Robinson.  These Defendants were never notified in any way regarding Robinson's propensity for violence, other than their knowledge of the fact that Robinson had been convicted of a felony.

McManis must understand that the prison system deals with the difficult task of classifying prisoners, 50% of whom were convicted of violent crimes.  It is an imprecise process to project which prisoners, many of whom have previously committed violent crimes, will be violent in the prison population.  The Plaintiff gave no reason as to how these Defendants should or would have known that Robinson was more dangerous than other prisoners who had committed violent acts.

Taking everything that the Plaintiff testified to as true, no cause of action under Section 1983  has been stated regarding his claims that these Defendants failed to protect him.

In the case of **Neals v. Norwood**, 59 F.3d 530, 533 (5th Cir. 1995), the prisoner asserted that prison officials wrongly denied his requests to be reclassified for protective custody, safekeeping status, or for a unit transfer, all in disregard of his safety.  The Court held that to establish a failure-to-protect claim under §1983, a prisoner must show that he is incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  *Id.*   The Court in **Neals** quotes **Framer v. Brennan**, 511 U.S. 825, 837 (1994), wherein the United States Supreme Court  held that in order to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." **Framer**, 511 U.S. at 837.  In **Framer**, the Court stated:

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official  knew of a substantial risk from the very fact that the risk was obvious.

*Id.*

The Fifth Circuit in **Newton v. Black**, 133 F.3d 301 (5th Cir. 1998), found that although the prisoner had reported a threat by another prisoner to the officers, and asked that one of them be transferred to another unit, no liability existed.  The Court, noting the fact that Parchman is "a dangerous place," with 80% of its 6,000 inmates being "violent offenders," found that the officer still was not aware that "a substantial risk" of harm existed.  The Court quoted**Framer** and **Neals** in holding that not even the state claim against the officer was actionable.

The Plaintiff has not stated facts supporting a finding that any of the Defendants acted with "deliberate indifference" to him, or that they even knew that a substantial risk of serious harm existed by housing Robinson near the Plaintiff and in general population.  No liability can be found under these facts.

The Plaintiff also contends that these Defendants were indifferent to his serious medical needs by refusing him medical care.  According to the Plaintiff, he bled continuously for 8-16 hours after the incident and was not given any medical care.   The Plaintiff's medical records were admitted into evidence, and the Court has examined the records of the medical treatment the Plaintiff has received after this incident in August, 2003.  The records indicate that the Plaintiff received frequent medical care from June 2003 through January 2004, including treatment for dental procedures and pain, for an ankle injured while playing basketball, for a foot fungus, for indigestion, and for middle back aches.  There is no notation in his medical records of any serious wounds or injury.

Indifference to a prisoner's serious medical needs constitutes an actionable Eighth Amendment violation under §1983.  *See* **Estelle v. Gamble**, 429 U.S. 97, 105-07 (1976); **Jackson v. Cain**, 864 F.2d 1235, 1244 (5th Cir. 1989).  However,  in order to maintain a viable claim for delayed medical treatment there must have been deliberate indifference, which results in harm. **Mendoza v. Lynaugh**, 989 F.2d 191, 193 (5th Cir. 1993).  *See, e.g.,* **Wesson v. Oglesby**, 910 F.2d 278, 284 (5th Cir. 1990) (delay must constitute "deliberate indifference"); *see also* **Shapley v. Nevada Bd. of State Prison Comm'rs**, 766 F.2d 404, 407 (9th Cir. 1985) (delay must result in "substantial harm").  Although the Plaintiff's wound may have been painful, it was obviously

fairly superficial and not life threatening, and it healed properly.  It is probable that no medical care would have assisted the Plaintiff in recovering from the wounds unless pain medication was administered.  The Plaintiff's record is replete with notations of medical assistance and care provided during his incarceration at the facility.  Under the circumstances of this case, as testified to by the Plaintiff and as augmented by his medical records and jail file, the Plaintiff was not "substantially harmed," and these Defendants cannot be found liable for violating his constitutional rights.  The facts as stated by the Plaintiff do not show that he was exposed to a harm or injury that violated contemporaneous standards of decency under **Wilson v. Seiter**, 501 U.S. 294, 296-97 (1991).

Under the case of **Cay v. Estelle**, 789 F.2d 318 (5th Cir. 1986), as modified by **Neitzke v. Williams**, 490 U.S. 319 (1989) and **Denton v. Hernandez**, 504 U.S. 25 (1992), the claims of the Plaintiff must have an arguable basis in law or fact; otherwise, dismissal under 28 U.S.C. § 1915 is appropriate.  Considering the law regarding these issues, the Court finds that the Plaintiff's claims have no basis either in law or in fact and, therefore, are frivolous[1] and fail to state a claim on which relief may be granted.  For these reasons, the Complaint will be dismissed, Final Judgment will be entered for the Defendants, and this action will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

IT IS, THEREFORE, ORDERED that this action be dismissed with prejudice.  A separate judgment to that effect will be entered in accordance with Fed. R. Civ. P. 58.

---

[1]"Frivolous" in this context is a legal term of art that indicates that, although the Plaintiff's allegations are serious to him, and may, indeed, be based on a tangible injury, the theory on which his claims are based are "indisputably meritless" in a legal sense.  *See Allison v. Kyle*, 66 F.3d 71, 73 (5th Cir. 1995).

IT IS SO ORDERED, this the 16th day of February, 2006.


S/ Alfred G. Nicols, Jr.
UNITED STATES MAGISTRATE JUDGE